F.O.E. AERIE 2337, a/k/a Eagle's Club, Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

Phillip W. Kania, Appellant.

Civ. No. 900202.

Supreme Court of North Dakota.

Dec. 17, 1990.

Gilje, Greenwood & Dalsted, Charles J. Gilje (argued), Jamestown, for appellant F.O.E. Aerie 2337, a/k/a Eagle's Club.

Schneider, Schneider & Schneider, 815 Third Avenue South, Fargo, Steven C. Schneider (argued), for appellant Phillip W. Kania.

Dean J. Haas, Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck (argued), for appellee.

MESCHKE, Justice.

Phillip W. Kania, an injured employee, and F.O.E. Aerie 2337, a/k/a Eagles Club, his former employer, each separately appealed from a district court judgment affirming a decision of the North Dakota Workers Compensation Bureau. The Bureau refused to require reimbursement of benefits paid to Kania but barred him from further benefits for a false statement that he made in his claim. We affirm.

Kania claimed workers compensation benefits on October 22, 1987, alleging that he injured his back on October 10, 1987, when he fell down some steps while working as a chef for the Eagles Club. Kania indicated on the claim form that he had injured his "middle back & left hip" and that he had not "had prior problems or injuries to that part of the body." The Bureau accepted liability and paid medical expenses and disability benefits.

In August 1988 the Bureau issued an amended order continuing payment of Kania's medical expenses and authorizing a one-year vocational retraining program. The Eagles Club requested a rehearing. After a formal hearing in February 1989, the Bureau found, among other things: (1) Kania "sustained injury to the low back when he slipped on a rubber runner and fell down some stairs;" (2) Kania "has been diagnosed as having musculoligamentous strain syndrome;" (3) "A report from Dr. Mardirosian ... indicated in a note dated March 20, 1987, that [Kania] reported an injury to the back seven years ago in a car accident;" (4) "On March 31, 1987, Dr. Richard Lardway concluded that [Kania] had a chronic low back pain;" (5) Kania "made a false statement concerning his prior medical history of low back;" (6) "Medical evidence indicates that [Kania's] condition worsened significantly as a result of the October 10, 1987, fall;" (7) "Claimant's false statement concerning his prior medical history has not lead [sic] the Bureau to pay benefits in error;" and (8) "The

Bureau has not paid benefits to the claimant based upon the false statement."

The Bureau made the following conclusions of law:

## I.

Claimant suffered an injury by accident arising out of and in the course of employment on October 10, 1987.

## II.

The Bureau has not paid benefits to the claimant based upon the false statement he made about his prior history of back injury. Therefore, pursuant to N.D.C.C. § 65–05–33 the Bureau is not entitled to repayment of those benefits.

## III.

N.D.C.C. § 65–05–33 does provide that in addition to reimbursing the Bureau benefits paid based upon a false claim or false statement, the claimant shall forfeit additional benefits relative to that same injury as a result of having made the false claim or false statement.

## IV.

Pursuant to N.D.C.C. § 65–05–33, claimant must forfeit additional benefits otherwise due him for the October 10, 1987, injury as a result of having made a false statement to the Bureau.

The Bureau ordered that Kania need not reimburse the Bureau for benefits paid but that future benefits be forfeited.

Kania and the Eagles Club each separately appealed to the district court. The district court affirmed the Bureau's decision. Kania and the Eagles Club each separately appealed to this court.

The Eagles Club argues: (1) that several of the Bureau's findings of fact [that Kania injured his back in a fall down stairs at the Eagles Club and that the Bureau did not pay benefits based on Kania's false statement, among others] are not supported by a preponderance of the evidence; (2) that the Bureau should have made a number of additional findings of fact; (3) that the

Bureau's conclusions of law I and II are not supported by its findings of fact; and (4) that the Bureau's conclusion and decision that benefits already paid need not be reimbursed are not supported by its findings of fact.

Kania argues that (1) the Bureau's finding that he made a false statement is not supported by a preponderance of the evidence; and that (2) the Bureau may not rely upon an immaterial false statement to deny all future benefits.

Ordinarily, determinations of an administrative body are presumed to be correct. *Perman v. North Dakota Workers Compensation Bureau,* 458 N.W.2d 484 (N.D.1990). "In reviewing the factual basis of administrative orders, there are three critical questions: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law?" *Id.,* quoting *Matter of Prettyman,* 410 N.W.2d 533, 536 (N.D. 1987). We exercise restraint in reviewing the factual findings of an administrative agency. *Id.* We determine only whether the Bureau could have reasonably reached its factual determinations by the greater weight of all the evidence. *Id.* Without detailing all of the evidence, we conclude from our review of the record that the Bureau reasonably reached its factual determinations by the greater weight of all the evidence. The Bureau's findings of fact are, therefore, supported by a preponderance of the evidence.

The Eagles Club argues that the Bureau should have made additional findings of fact relating to such things as Kania's prior back problems, a prior car accident, Kania's failure to report prior back problems, and Kania's change in physicians. The Administrative Agencies Practice Act directs an agency to "make and state concisely and explicitly its findings of fact...." NDCC 28–32–13. An administrative agency's findings are adequate if they enable a reviewing court to understand the basis of the agency's deci-

sion. *Hystad v. Industrial Commission,* 389 N.W.2d 590 (N.D.1986). The Bureau's findings in this case enable us to understand the basis of its decision. We see no possibility that the additional findings sought by the Eagles Club would have changed the Bureau's decision. It is enough that the findings made by the Bureau are supported by a preponderance of the evidence and that they support its conclusions and decisions. *In re Annexation of Part of Donnybrook Pub. Sch. Dist. No. 24,* 365 N.W.2d 514 (N.D.1985). We conclude that the Bureau did not err in failing to make the additional findings sought by the Eagles Club.

■ The Bureau's differential treatment of Kania's false statement about his prior medical history presents a more difficult question. At the time of Kania's injury, NDCC 65–05–33 [1] said:

Any claimant who files a false claim or makes a false statement in connection with any claim or accepts total disability benefits paid for a period after the claimant has returned to work is guilty of a class B misdemeanor. In addition to any other penalties provided by law, the claimant shall reimburse the bureau for any benefits paid based upon such false claim or false statement or for such period that the claimant was not totally disabled; and, in addition, shall forfeit any additional benefits relative to that same injury.

A false statement in a claim can result in the claimant being required both to reimburse the Bureau for benefits paid and to forfeit future benefits.

The Bureau found that it did not pay benefits based upon Kania's false statement about his prior medical history. Therefore, the Bureau concluded that it was not entitled to reimbursement for the benefits that it had paid. On the other hand, the Bureau concluded that Kania "must forfeit additional benefits otherwise due him for the October 10, 1987, injury as a result of having made a false statement to the Bureau."

The Eagles Club argues that the Bureau's conclusion, that it was not entitled to reimbursement of benefits paid, is not supported by its findings of fact because "[t]here is no question that the Bureau can, and should, deny benefits when a claimant has not been truthful." Kania argues that because the Bureau found that his false statement was "immaterial" for reimbursement of benefits paid, the Bureau cannot rely upon it to deny all future benefits.

The Bureau urges that NDCC 65–05–33 "requires a materiality test to be applied to determine whether the false *claim or* false *statement* caused benefit to be paid in error" and "allows for forfeiture of additional benefits in the future, whether or not the false claim or false statement is de minim[i]s" because "false statements should have *some consequence.*" (Emphasis by the Bureau). Counsel for the Bureau also acknowledged in oral argument that a false statement must be intentional to trigger the statutory consequences. We prefer the balanced application by the Bureau to either of the extremes urged by the disputants.

The applicable version of NDCC 65–05–33 penalizes three things: false claims, false statements in a claim, and acceptance of total disability benefits for a time after the claimant has returned to work. Heretofore, we have not construed this statute as to either false claims or false statements. *Hayden v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 489 (N.D.1989), is the only case in which we have construed NDCC 65–05–33 at all. That case involved acceptance of total disability benefits paid for a time period after the claimant returned to work. Although the Eagles Club also relies on *Fercho v. North Dakota Workers Compensation Bureau,* 440 N.W.2d 507 (N.D.1989), that reliance is misplaced. While the district court in *Fercho* found that "Fercho made no false statement upon which this claim was based, pursuant to the provisions of § 65–05–33" (*Id.,* at 508), *Fercho* was decid-

---

**1.** NDCC 65–05–33 has since been amended to apply not only to benefits paid to claimants, but also to payments for services to other persons as well. *See* S.L. 1989, Ch. 766, § 12.

ed on credibility factors, not on the statutory effect of a false statement.

Since NDCC 65–05–33 is not entirely clear, each of the parties posits a possible interpretation of the statute. However, as the Bureau points out, the Eagles Club's interpretation is extreme and would result in reimbursement for all benefits paid when a claimant makes a false statement, regardless of its materiality. On the other hand, Kania's interpretation is equally extreme because it would result in *"no consequences whatever* to an outright lie if the lie was not essential to the determination to pay the claim initially." (Emphasis by the Bureau). We conclude that the Bureau has advanced a more reasonable construction of the statute and its effect.

In other types of insurance cases involving false statements, intentionality and materiality are key factors. *See, e.g.,* 21 Appleman, *Insurance Law and Practice,* § 12122 (1980) (to establish the defense of misrepresentation in an application, "the insurer is generally required to show both falsity and materiality of such representation"); 13A *Couch on Insurance 2d* § 49A:63 (1982) ("In order to constitute fraud in a proof of loss ..., it is necessary that the statement relate to a material fact and that the person in question act with the specific intent to defraud or deceive the insurer"); *Couch,* § 49A:67 ("the term 'fraud or false swearing' in a policy does not have reference to unintentional errors"). To trigger the statutory consequences, a false statement must be intentional, not inadvertent, and material, not peripheral. The Bureau fairly interpreted the statute in deciding this case.

■ Kania argues that all of the provisions of the Workers Compensation Act should be given a liberal construction in favor of workers and that "[a] liberal interpretation of § 65–05–33 could not comprehend such a punitive forfeiture of benefits when the sole rationale for the forfeiture is admittedly based on an immaterial false statement." Kania's eloquence overlooks the fact that NDCC 65–05–33 specifically declares that certain acts warrant forfeiture, thus undercutting his argument. We

conclude that the Bureau reasonably determined that Kania's false statement was sufficiently material to support forfeiture of future benefits, even though it was not material enough to cause the Bureau to pay initial benefits.

We affirm the Bureau's decision.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the majority opinion. I write separately to note that if materiality were to be a test not only for repayment of past benefits but for a denial of future benefits as well, the test would appear to me to be met in this instance. I agree that we should sustain the Bureau's determination that the false statement did not affect its payment of benefits but it is exactly the type of statement which I believe strikes at the heart of the reason for the enactment of section 65–05–33, NDCC, because it is a statement which could have misled the Bureau and the medical experts upon which it relied to conclude that Kania's problems were due to his fall rather than due to the injury in the previous automobile accident. I assume the purpose of the question on the claim form asking whether or not the claimant had prior problems or injuries to his middle back and left hip was to determine whether or not the current problem is due to a work-related injury or to a previous injury or condition. To falsify the answer to that question is an attempt to mislead the Bureau as to a most material fact. It is perhaps due more to coincidence and Kania's good fortune, if not the benevolence of the Bureau, rather than immateriality that the Bureau was not deceived.