**TOM BEUCHLER CONSTRUCTION, INC., Plaintiff and Appellee,**

v.

**CITY OF WILLISTON, a municipal corporation, Defendant and Appellant.**

**Eugene W. KNUTSON, Defendant and Third-Party Plaintiff,**

v.

**CITY OF WILLISTON, a municipal corporation, and Tom Beuchler, individually, Third-Party Defendants.**

**Civ. No. 870031.**

Supreme Court of North Dakota.

Sept. 29, 1987.

Russel G. Robinson (argued), and Orlin W. Backes, of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellee.

Margy Bonner, Williston, for defendant and appellant.

VANDE WALLE, Justice.

This is an appeal from a judgment against the City of Williston based upon a finding of negligence in the issuance of a building permit. We affirm the judgment.

This case was previously before this court in *Beuchler v. City of Williston,* 392

N.W.2d 403 (N.D.1986) (hereinafter *Beuchler I*). In *Beuchler I* the parties contested the trial court's determination that the City of Williston owed no duty to Beuchler. At that time the parties did not raise the issue of governmental immunity, which is one of the focal points of this appeal.

Eugene Knutson leased four lots adjacent to Sloulin International Airport from the City of Williston (hereinafter City). Knutson planned to build a hangar and office complex on this land. The lease signed by Knutson contained the following restrictive covenant:

> "*Height Restrictions:* The Airport authority reserves the right to restrict development above a specified height on the leased premises. Tenant, upon request made to City, shall be furnished with the requisite maximum height. Tenant shall have no development above 1930 feet MSL elevation."

In 1981 Knutson entered into a contract with Tom Beuchler Construction, Inc. (hereinafter Beuchler), for construction of the hangar and office complex. On December 2, 1981, Beuchler applied for a building permit to George Hughes, the City's building inspector. Hughes gave Beuchler approval to proceed with the footings and cement work for the complex before the winter freeze. However, Hughes instructed Beuchler to not begin construction of the building until the final plans had been approved.

The floor elevation for the complex was established by Knutson and Beuchler. This was done by contacting the airport manager for the City of Williston, Jack Daniels, who referred them to the engineering firm of Webster, Foster & Weston, P.C., who did work for the City of Williston. This firm set a benchmark for Beuchler to use in setting a floor elevation.

On February 1, 1982, Beuchler submitted final plans for review by Building Inspector Hughes. The final plans and specifications were approved and a building permit was issued. Thereafter Beuchler began construction.

Beuchler submitted invoices to Knutson for payment on December 31, 1981, February 2, 1982, and March 2, 1982. None of these were paid. In the middle of March 1982 Beuchler ceased work on the project and advised Knutson that work would not resume until the invoices were paid.

On March 29, 1982, the City notified Knutson and Beuchler that the building exceeded height restrictions contained in the lease between the City and Knutson. Negotiations to resolve this problem failed, and the City ordered the building to be removed. Beuchler removed the building. Beuchler then began this action against Knutson and the City, alleging a breach of the construction contract by Knutson and alleging that the City negligently issued the building permit, and requesting damages for the loss incurred in removing the building.

The trial court concluded that the building inspector had no duty to check the restrictive covenant in Williston's lease with Knutson and therefore was not negligent. Beuchler appealed and this court held that the trial court erred in limiting the building inspector's standard of care to ensuring compliance with the Uniform Building Code and remanded the case for findings under an appropriate standard of care. *Beuchler I*, 392 N.W.2d at 406. On remand the trial court determined that the City was negligent, and held it and Knutson jointly and severally liable. The City appeals this finding, raising for the first time on appeal the issue of governmental immunity, although this issue had not been further considered by the trial court on remand.[1]

The City argues that we need not reach the issue of governmental immunity because it asserts that the trial court erred in finding the City's actions in regard to the permit to be a proximate cause of Beuchler's loss. The question of whether or not proximate cause exists is one of fact. See *Jim's Hot Shot Service, Inc. v. Continental Western Insurance Co.*, 353 N.W.2d 279, 283 (N.D.1984). Findings of

---

1. Beuchler prevailed in its action against Knutson prior to the appeal in *Beuchler I*. Knutson did not appeal from that judgment and he is not involved in this appeal.

fact are not to be set aside unless found to be clearly erroneous under Rule 52(a) of the North Dakota Rules of Civil Procedure. A finding of fact is not clearly erroneous "unless it has no support in the evidence or, although there may be some supporting evidence for it, this court is left with a definite and firm conviction that a mistake has been made." *Landsberger v. Landsberger,* 364 N.W.2d 918, 920 (N.D.1985); *Eszlinger v. Wetzel,* 326 N.W.2d 215 (N.D. 1982). Thus we will not overrule the trial court's determination that the City's actions were a proximate cause of Beuchler's loss unless we have a definite and firm conviction that a mistake was made.

In considering whether an act is the proximate cause of an injury this court previously stated:

"To warrant a finding that the negligent act is a proximate cause of the damage, it must appear that the damage complained of was the natural and reasonably foreseeable result of the negligent act, unbroken by any controlling, intervening cause.... However, in order for a negligent act to constitute a proximate cause of an injury so as to sustain a recovery it is not necessary that the negligent act be the sole cause of the injury. [Citations omitted.]" *F-M Potatoes, Inc. v. Suda,* 259 N.W.2d 487, 493 (N.D.1977).

In this case we are not left with a firm conviction that the trial court erred in finding that it was reasonably foreseeable that Beuchler would rely on the City's issuance of a permit in constructing the hangar/office complex. Furthermore, although the City argues that Beuchler's problem was Knutson's failure to pay the invoices, Beuchler would not have had to remove the building if it had not been in violation of the restrictive covenant. Thus we refuse

to overturn the trial court's determination that the City's actions were a proximate cause of Beuchler's loss.

■ The City also argues that the decision of the trial court finding it negligent must be reversed because the City was protected by governmental immunity under Section 32-12.1-03(3), N.D.C.C.[2] The City raised this argument to the trial court in the proceedings prior to the first appeal of this case. At that time the trial court made a tentative finding that governmental immunity did not apply in this case. On the first appeal in *Beuchler I* we considered what standard of care the City owed Beuchler. At that time the City failed to raise the issue of governmental immunity as a basis for sustaining the judgment dismissing the complaint. The question thus becomes whether by failing to raise the issue of governmental immunity at the first appeal, the City waived its right to appeal the issue.

This court has long held to a policy of prohibiting appeals in a piecemeal fashion. In *Scottish-American Mortg. Co. v. Reeve,* 7 N.D. 552, 75 N.W. 910 (1898), the court discussed the appealability of an issue which was in existence prior to a first appeal of that case:

"The infirmity in this judgment, if any there was, existed prior to the former appeal, and appeared in the record that was brought to this court, because the record was substantially the same in that case as in this; but no objection such as is now urged was taken either in the trial court or on appeal, and, the judgment having been affirmed in this court, that is an end of all matters that were or might have been litigated in the case. All such matters become res adjudicata for the purposes of that case." 75 N.W. at 910.

**2.** Section 32-12.1-03(3) provides:

"A political subdivision is not liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or [not]

the discretion involved be abused. Specifically, a political subdivision or an employee thereof is not liable for any claim which results from:

"a. ...

"b. The decision to undertake or the refusal to undertake any judicial or quasi-judicial act, including the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial."

Thus a party in a second appeal may not "present issues which were resolved by this court in the first appeal or which would have been resolved had they been presented." *Jennings v. Shipp*, 148 N.W.2d 330, 331 (N.D.1966).

In this case the City raised the issue of governmental immunity in the trial court proceedings prior to the first appeal in *Beuchler I;* thus the proper time for the City to have raised the issue of governmental immunity at the appellate level was during the first appeal of this case, not at this time.

Although *Scottish-American Mortg. Co. v. Reeve, supra,* and *Jennings v. Shipp, supra,* refer to matters which could have been resolved in a first appeal but which were not then presented as being "res adjudicata" we do not rely on the doctrine of res judicata in making our decision.

■ It does appear that the doctrine of law of the case is applicable in this instance. Although, as generally used, the law of the case is defined as "the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same" [Black's Law Dictionary (1979) ], we believe that the doctrine is broader than stated. Rather, the law of the case encompasses not only those issues decided on the first appeal, but also those issues decided by the trial court prior to the first appeal which were not presented for review at the first appeal. See *Norris v. Bristow*, 361 Mo. 691, 236 S.W.2d 316 (1951). Thus the law of the case includes "questions which were actually presented and considered at the former trial, or on appeal from the judgment thereon." *Muhlhauser v. Beck-*

*er,* 74 N.D. 103, 20 N.W.2d 353, 362 (1945) (on rehearing). In this case the issue of governmental immunity was presented to and decided upon by the trial court prior to the first appeal, but was not presented at the first appeal. Thus the doctrine of law of the case precludes the issue from being raised on a second appeal.[3]

By failing to raise the issue of governmental immunity in the first appeal, the City waived the issue and is now foreclosed from raising it. This use of the waiver doctrine is grounded on judicial economy— we will not hear on a second appeal what could have been presented in the prior appeal.

Although in *Beuchler I* the City was not the appellant, having prevailed in the trial court on the issue of negligence, it could have raised the issue of governmental immunity by a cross-appeal, because the trial court ruled against it on that issue. The City might also have defended the judgment before this court by urging that we affirm the trial court's judgment dismissing the complaint because the trial court's disposition was correct even though for a different reason, i.e., that the City was immune from liability pursuant to statute. E.g., *First Nat. Bank of Belfield v. Burich*, 367 N.W.2d 148 (N.D.1985), and *Avco Financial Services v. Schroeder*, 318 N.W.2d 910 (N.D.1982). Therefore, we will not address the City's governmental immunity claim on this appeal.

The decision of the trial court is affirmed.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.

---

3. This is not akin to *Poyzer v. Amenia Seed and Grain Co.,* 409 N.W.2d 107 (N.D.1987), in which we held that where a summary judgment is reversed and the case is remanded for trial because issues of material fact exist, the law-of-the-case doctrine does not apply to those issues not decided on appeal. The holding in *Poyzer* was the result of an argument by the appellant Cargill Incorporated that the only issue properly before the trial court on remand was whether the Poyzers were bona fide encumbrancers without notice. We concluded that the trial court did not err on remand in permitting the Poyzers to raise the question of the priority of the mortgages, which had not been litigated in the prior proceeding, *Poyzer v. Amenia Seed and Grain Co.,* 381 N.W.2d 192 (N.D.1981).